# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL L. WINSTON ,**

        Plaintiff,

-vs-                                  **Case No. 15-CV-1398**

**DAVID A. CLARKE, KEONA GARTH-DICKENS,
BRANDON LAWLER, NURSE CHRIS,
JANE DOE #1, Nurse, JANE DOE #2, Nurse Practitioner,
JOHN DOES #1-10, C/O,**

        Defendants.

## SCREENING ORDER

On February 24, 2016, the Court ordered Michael Winston to file an amended complaint if he sought to include allegations against Dr. Lothian in this action. (ECF No. 15). On March 7, 2016, the plaintiff indicated that he did not seek to pursue claims against Dr. Lothian (ECF No. 16). Therefore, the Court will screen the original complaint pursuant to 28 U.S.C. §1915A.

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, plaintiffs must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Indeed, allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Federal courts follow the two step analysis set forth in *Twobly* to determine whether a complaint states a claim. *Iqbal*, 556 U.S. at 679. First, the Court determines whether the plaintiff's legal conclusions are supported by factual allegations. *Id.* Legal conclusions not support by

facts "are not entitled to the assumption of truth." *Id.* Second, the Court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id. Pro se* allegations, "however inartfully pleaded," are given a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In the context of a § 1983 claim, the plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under the color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). A suit seeking monetary damages under § 1983 must further allege that the defendants were personally involved in the constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014).

## COMPLAINT ALLEGATIONS

On June 6, 2012, the plaintiff was detained at the Milwaukee County Jail. After the intake procedure was complete, the plaintiff received one set of clean clothing. The plaintiff did not receive additional clean clothing until the following week. He also did not receive proper footwear for recreational activities. As a result, the plaintiff was forced to

- 3 -

Case 2:15-cv-01398-JPS   Filed 03/18/16   Page 3 of 12   Document 17

remain in sweaty clothing after playing basketball and was forced to run around the court with bare feet. This series of events caused jail guards to refer to the plaintiff by names reflecting "foul smells," and it also caused blistering on the plaintiff's feet. (ECF No. 1 at 4)

On an unknown date, the plaintiff was playing basketball when he slipped and fell on his right hand. The plaintiff heard his bones crack and his hand instantly ballooned into an abnormal size. The duty officer on site called for medical assistance but was informed that the plaintiff would have to wait for a "medication pass." (ECF No. 1 at 4). Several hours later, Jane Doe Nurse #1 examined his hand and diagnosed the injury as a "bad sprain." (ECF No. 1 at 5). She gave the plaintiff Tylenol and ice. The plaintiff was in severe pain while he waited for treatment.

Later that evening, the plaintiff's hand doubled in size and displayed discoloration around the middle and ring finger. The plaintiff's pain became so unbearable that he could not sleep. He requested that Jane Doe Nurse #1 examine his hand again. Upon second examination, Jane Doe Nurse #1 indicated that she thought he was "exaggerating his pain and suffering." (ECF No. 1 at 5). She provided additional Tylenol and ice and refused further treatment. The plaintiff demanded to be taken to a hospital. A correctional officer denied his request and threatened to

place him in segregation if he did not return to his cell. The plaintiff returned to his cell.

The next day, Jane Doe Nurse Practitioner #2 examined the plaintiff's swollen hand. She took x-rays and concluded that the plaintiff fractured his middle and right ring finger. She also indicated that the fracture ran up through the center of the hand. Jane Doe Nurse Practitioner #2 prescribed narcotic pain relievers and created a make-shift splint. She created the splint by breaking two wooden tongue depressors in half and wrapping the plaintiff's fingers around the wooden tongue depressors with tape. When the plaintiff questioned her technique, she informed him that under David Clarke's jail policy she could not provide a proper splint. The plaintiff's hand healed improperly and he still experiences difficulty using his hand. The plaintiff filed several inmate complaints which were ignored and given no response.

On July 24, 2013, the plaintiff was placed in a special needs dormitory after engaging in self-harming behavior. The cell contained feces on the walls, the toilet, and the door. The plaintiff informed Correctional Officer Brandon Lawler about the unsanitary conditions and Lawler indicated that the cell would be cleaned first thing in the morning. Lawler also told the plaintiff that he "should have thought about the

consequences before trying to kill himself." (ECF No. 1 at 7).

The next morning, the plaintiff had an appointment with psychiatrist Dr. Lothian. Lothian prescribed Risperdal and Cogentin. The plaintiff told Lothian that he did not want to take Risperdal because of the side effects that occurred the last time he took the medication. Lothian told the plaintiff that Cogentin would curb the side effects. He also said that if the plaintiff refused to take the medication, the plaintiff would be placed in the special needs dormitory permanently. The plaintiff agreed to take the medication and returned to general population. The medication caused Gynecomastia, a condition that can only be corrected by surgery.[1] The plaintiff was taken off Risperdal shortly after.

The plaintiff was removed from regular housing and placed in the special needs dormitory several more times during his time at the Milwaukee County Jail. Each time, his cell contained feces, urine, and blood. The plaintiff requested that his cell be sanitized or he be moved to a different cell. Both options were denied. John Doe correctional officers informed the plaintiff that "if he did not like being placed in 'shitty cells' then stop coming 'down here…'" (ECF No. 1 at 9). Captain Keona Garth-

---

[1] The plaintiff asserts that he had "tender and significantly swollen nipples, that closely resembled that of small female breast[s]." (ECF No. 8).

Dickens stated that she "did not like him," she referred to him as a "whiner," and told him that complaining to her "would get him nowhere." (ECF No. 1 at 9-10). She also stated that the Milwaukee County Jail was not a Holiday Inn.

The unsanitary conditions in his cell caused the plaintiff to contract infectious diseases on two separate occasions. On the first occasion, Nurse Chris misdiagnosed the infectious disease as a sty. Shortly after the misdiagnosis, the plaintiff was transferred to the Mendota Mental Health Institution for an unrelated treatment. The doctors at Mendota informed the plaintiff that he did not have a sty but instead had Methicillin Resistant Staphy Locuccus Aureus ("MRSA"), a contagious flesh eating disease. The doctors at Mendota treated the disease and the plaintiff returned to the county jail. The plaintiff requested again that his cell be sanitized and the request was denied.

The plaintiff contracted the disease again. The second time, the disease created a large boil on the top of the leg. The boil caused so much pain that the plaintiff could not walk. The disease also caused "tunneling" a condition in which flesh eating bacteria spread down the plaintiff's leg. (ECF No. 1 at 11). The plaintiff received surgery to stop the spread of the disease. He now has a quarter size hole in his leg. The surgeons informed

the plaintiff that the nurses at the county jail would have to take him to a sterilized location to pack the wound and prevent further infection. The nurses at the county jail refused to comply and stated that the plaintiff either "refuse treatment or lay down [in his cell] and be qui[e]t[]." (ECF No. 1 at 12).

For relief, the plaintiff seeks: (1) a declaration that the acts and omissions described in the complaint violated his Eighth and Fourteenth Amendment rights, (2) an injunction ordering Clarke to provide proper clothing, footwear, medical care, and bi-weekly sanitation services at the Milwaukee County Jail, and (3) compensatory damages in the amount of $200,000 jointly and severally from Clarke and Garth-Dickens; $150,000 jointly and severally from Jane Doe Nurse #1, Jane Done Nurse Practitioner #2, and Nurse Chris; and $75,000 from Lawler and each John Doe correctional officer involved in the action. The plaintiff also requests that the Court order Clarke to cover the cost of surgery to correct his disfigurement, and he seeks any other relief that the Court deems appropriate.

## LEGAL ANALYSIS

The plaintiff's complaint arises under the Fourteenth Amendment due process clause because he was a pretrial detainee. *Budd v. Motley*, 711

F.3d 840, 842 (7th Cir. 2013). A pretrial detainee is entitled to be free from conditions that amount to "punishment" under the Eight Amendment. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). Nevertheless, the Court uses Eight Amendment case law as a guide in evaluating condition of confinement claims that arise under the Fourteenth Amendment. *Budd*, 711 F.3d at 842 (7th Cir. 2013); *See Smith*, 803 F.3d at 310-11.

To state an Eighth Amendment claim, the plaintiff must allege that jail officials were "deliberately indifferent" to a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994). Jail officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Inmates have a "serious harm" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* "Serious harm" includes adverse conditions that deny "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834.

The plaintiff may proceed with his claims against Nurse Chris, who refused to use a sterilized location to pack the plaintiff's wound, as the

- 9 -

surgeons instructed after plaintiff's surgery. As to Jane Doe Nurse #1, plaintiff alleges that she misdiagnosed the fracture in his hand as a bad sprain. This allegation suggests negligence or medical malpractice, not deliberate indifference. *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Similarly, plaintiff alleges that Jane Doe Nurse Practitioner #2 wrapped his finger incorrectly. Thus, plaintiff can proceed with his claims against Nurse Chris, but not the unknown nurses.

The plaintiff may also proceed with his claims against Garth-Dickens, Lawler, and the John Doe Correctional Officers #1-10 who refused to sanitize his cell. Plaintiff alleged that his cell in the special needs dormitory contained feces, blood, and urine. He notified Garth-Dickens, Lawler, and John Doe correctional officers of the condition and they refused to sanitize his cell. They also made statements indicating that they refused to sanitize the cell because it was the plaintiff's fault that he was self-harming. As a result, the plaintiff may proceed on a deliberate indifference claim against Garth-Dickens, Lawler, and the John Doe Correctional Officers #1-10. The plaintiff will have the opportunity to identify John Doe Correctional Officers #1-10 through discovery.

Finally, the plaintiff may also proceed with his claims against Clark. The plaintiff alleges that Clarke's jail policy which only provides one pair

of clean clothing and no shoes causes "humiliation" and deprives him of the basic necessities of civilized life. As a result, the plaintiff also alleged § 1983 claims against Clarke.

## **ORDER**

**IT IS THEREFORE ORDERED THAT** the plaintiff may proceed on his Eighth and Fourteenth Amendment claims against all of the listed defendants, except for Jane Does 1 and 2, pursuant to 28 U.S.C. § 1915A(b).

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between Milwaukee County and this Court, copies of the plaintiff's complaint and this order are being electronically sent today to Milwaukee County for service on the Milwaukee County defendants.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS ALSO ORDERED** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue

Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2015.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 12 -

Case 2:15-cv-01398-JPS   Filed 03/18/16   Page 12 of 12   Document 17