# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MICHAEL L. WINSTON,<br><br>Plaintiff,<br>v.<br><br>DAVID A. CLARK, KEONA GARTH-DICKENS, JEFFREY ANDRYKOWSKI, LT. REEVES, LT. RECKLESS, OFFICER COPELAND, BRANDON LAWLER, OFFICER JOSHUA MIKULECKY, OFFICER D. ADAMS, OFFICER D. BLUE, OFFICER BROOKS, OFFICER SPITTLEMEISTER, D. BRODSKY, CHRISTINE BECKER, DOROTHY GREER, FREDERICK PORLUCOS, MAI XIONG, and TERRI GOUDY,<br><br>Defendants. | Case No. 15-CV-1398-JPS<br><br><br><br>**ORDER** |

1.     **INTRODUCTION**

Plaintiff Michael Winston ("Winston"), an inmate at Columbia Correctional Institution who was formerly incarcerated at the Milwaukee County Jail (the "Jail"), brought this action against former Milwaukee County Sheriff David A. Clarke ("Clarke") and several officers and medical personnel employed by Milwaukee County—Keona Garth-Dickens, Joshua Mikulecky, D. Adams, D. Blue, Officer Brooks, Officer Copeland, D. Brodsky, Christine Becker, Dorothy Greer, and Frederick Porlucos (collectively, the "Jail Staff")—for alleged violations of his civil

rights.[1] Specifically, Winston alleges that the defendants were deliberately indifferent to his serious medical needs for failing to properly treat MRSA infections he contracted while incarcerated at the Jail and for keeping him in an unsanitary cell where he contracted those infections. (Docket #54-1 and #57 at 2-3). Winston also alleges that the Jail's clothing and shoe policy deprives inmates of the basic necessities of civilized life. *Id.*

Winston filed a motion for summary judgment, as did all of the defendants, and those motions are fully briefed. For the reasons stated below, the Court will grant the defendants' motion for summary judgment and dismiss this case without prejudice.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not

---

[1] Winston also brought claims against Jeffrey Andrykowski, Lieutenant Reeves, Lieutenant Reckless, Officer Spittlemeister, Mai Xiong, Terry Goudy, and Brandon Lawler, but he moved the Court to dismiss his claims against those defendants. (Docket #132). The defendants do not oppose such dismissal. (Docket #133 at 5). The Court will therefore grant Winston's motion to dismiss those certain defendants named in his motion of July 18, 2017.

weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

**3.    RELEVANT FACTS**

The following facts are taken from the parties' proposed findings of fact, the responses thereto, the declarations in support of the proposed facts, and related exhibits. (Docket #71, #72, #83, #84, #85, #92, #95, #97, #104). At all times relevant to this case, Clarke was the Sheriff of Milwaukee County and the Jail Staff defendants were employed by Milwaukee County and worked at or for the Jail. Winston was incarcerated at the Jail from June 6, 2012 to March 26, 2014.

**3.1    Winston's Confinement in the Jail**

When Winston was detained at the Jail on June 6, 2012, he received one set of clean clothing and flip flops per Jail policy, but no tennis shoes. Jail policy allows for the provision of tennis shoes to inmates who require them for medical purposes, but that was not the case for Winston. He was given a change of clothes six days after being admitted to the Jail. Winston says his attire was inadequate because, as a result of having only one set of clothes, he was forced to remain in sweaty clothing after playing basketball and, without tennis shoes, he was forced to run around the court in bare feet, causing injury. Inmates are not required to play basketball at the Jail.

In October 2012, on one occasion when Winston was playing basketball, he fell and injured his hand, and he claims to have been in severe pain while waiting for treatment. He ultimately received treatment for his hand, but he believes his hand healed improperly.

In July 2013, Winston was moved to a "special needs" cell at the Jail. He claims to have verbally complained to Jail staff about the unsanitary conditions of his cell, including smeared feces on the walls. He was moved to a different cell within the special needs unit, but Winston says he confronted the same unsanitary conditions in that cell. In August 2013, Winston began complaining of irritation to his left eye, for which he was treated by medical staff at the Jail. Soon afterward, Winston was transferred to Mendota Mental Health Institute ("Mendota") for unrelated reasons, and was treated for the infection in his eye, which staff at Mendota determined was MRSA.[2] Winston was transferred back to the Jail on September 13, 2013 with a clean bill of health. Winston was put back into a cell about which he previously complained and voiced his unhappiness to Jail staff about its uncleanliness. He switched cells in late September.

In November 2013, Winston began complaining of a boil on his leg. A culture taken from his thigh showed that it contained MRSA. Throughout the month of November, Winston received treatment at the Jail, including a nurse performing an incision and draining the boil and regular dressing changes. The treatment was resolved in early December 2013 when the wound was reported to have closed.

### 3.2 The Jail's Grievance Policy

The Jail maintains a grievance policy that prescribes the steps inmates must take to submit their complaints about non-emergency issues related to their health and welfare or the services they are provided.

---

[2]Methicillin-resistant Staphylococcus aureus, or MRSA, is a bacterial infection that usually causes sores or boils on the skin. http://www.webmd.com/skin-problems-and-treatments/understanding-mrsa#1.

(Docket #83-3 Ex. C). An inmate with a non-emergency complaint must fill out a grievance form and present it to an officer, who attempts to resolve the grievance himself and records, on the back of the grievance form, the steps taken toward that end. *Id.* A lieutenant reviews the officer's work and responds to the grievance in writing. *Id.* The grievance and response are logged in a grievance database. *Id.* The inmate, if he is unsatisfied with the resolution of his grievance, can appeal to the captain and then to the jail commander for a final decision. *Id.*

The parties dispute whether Winston filed grievances with the Jail about his medical issues and the Jail's clothing and shoe policy before instituting this lawsuit. Additional facts regarding Winston's participation in the grievance process are provided below where relevant to the Court's analysis.

4. **ANALYSIS**

The defendants move for summary judgment on two grounds. First, the defendants argue that Winston failed to exhaust his administrative remedies as to his claims against them, which he is required to do by law prior to filing suit. (Docket #94 at 6-7). Second, as to the Jail Staff, the defendants argue that Winston is not entitled to relief on his deliberate indifference claims because the defendants were not deliberately indifferent to Winston's medical needs or, if they were, they are entitled to qualified immunity. *Id.* at 7-15. Finally, the defendants argue that Winston is not entitled to relief on his claim regarding the Jail's clothing and shoe policy because it is not an unconstitutional condition of confinement. *Id.* at 15-20. The Court will address the question of exhaustion first, because "[a] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks

discretion to resolve the claim on the merits[.]" *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

### 4.1 Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by the defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The defendants contend that during Winston's incarceration at the Jail from June 6, 2012 until March 24, 2014, Winston failed to file any grievances related to the issues about which he now complains in this suit. Specifically, the defendants state that Winston did not file grievances about "the jail's shoe policy, his medical treatment, the conditions of any of his cells, or the jail's clothing policy." (Docket #94 at 2). In support of their position on exhaustion, the defendants submitted an affidavit by James Cox ("Cox"), a Milwaukee County deputy inspector in the internal affairs department. (Docket #92). Cox avers that he reviewed the Milwaukee County Jail Inmate Grievance database for the relevant time period and the database does not reflect the filing of any grievances by Winston that are relevant to the issues he now raises. *Id.* at 2.

Winston, on the other hand, argues that he did file relevant grievances during his incarceration. He says he "filed multiple grievances with the jail regarding his issues; the jail in return provided no response." (Docket #105 at 2). As to his medical issue specifically, Winston says he filed grievances before and after being treated for his first MRSA infection (in his eye), and again when he contracted MRSA for a second time (in his leg). *Id.* Shortly thereafter, Winston started engaging in self-harming behavior and was not allowed to use sharp writing instruments; therefore, he says, he could not follow up on his grievances. *Id.* at 2-3.[3] Winston did not produce copies or other evidence of his alleged grievances.[4]

Winston's summary judgment briefing references a declaration that he filed along with his initial complaint stating that he tried with due diligence to obtain through open records requests copies of grievances he filed that concerned the issues raised in this suit, though he did not provide copies of those requests. (Docket #4 at 1). Winston also says that,

---

[3]After the parties' summary judgment motions were fully briefed, Winston filed two motions related to newly discovered evidence—a motion to supplement his summary judgment submissions with new evidence and a motion to stay disposition of the pending summary judgment motions because of the newly discovered evidence. (Docket #126 and #128). The Court will grant Winston's motion to supplement his submissions, (Docket #128), and deny as moot his motion to stay, (Docket #126). The "new evidence" is the defendants' admission that inmates are not allowed to possess writing utensils while housed in the special needs unit. (Docket #130-1). As explained below, this does not change the Court's conclusion as to Winston's failure to exhaust his remedies.

[4]Winston claims that the grievance forms used at the Milwaukee County Jail in 2013 when he was incarcerated did not have a carbon copy sheet that the inmate could keep for his records. (Docket #97 at 2). Winston has not supported this fact with evidence, and the defendants do not address it. Regardless of whether a carbon copy was available to Winton as a record of his alleged grievances, the fact remains that he has produced no record that he submitted any grievances.

once he was moved to state prison, he sent letters to the Milwaukee County Jail on May 10, 2014 and October 5, 2014, and to Clarke himself on June 30, 2015, requesting copies of his grievances. *Id.* Winston attached copies of those letters to his complaint. (Docket #1 Exs. 1-3). The last letter was apparently given to an officer for mailing at the state prison where Winston is incarcerated, and Winston provided a written statement from an officer confirming that an envelope was sent from the prison to the Milwaukee County Jail's address on July 4, 2015. *Id.* at Ex. 4.

The competing declarations from Winston and Cox create a dispute of material fact as to whether Winston filed grievances with the Jail (and properly and thoroughly appealed those grievances) as to the issues he raises with this suit. In other words, there exists a dispute of fact as to whether Winston exhausted his remedies before filing this suit. Normally, a dispute of material fact would preclude the grant of summary judgment and require that the dispute be submitted to a jury. However, the Seventh Circuit instructs that a prisoner is not entitled to a jury trial on contested issues regarding his failure to exhaust administrative remedies; instead, the district court is tasked with resolving any such questions itself. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

### 4.2 Resolution of Factual Dispute Under *Pavey*

The controlling precedent in this area is *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), from which the term "*Pavey* hearing" takes its name. The *Pavey* Court outlined the sequence to be followed in a case in which exhaustion is contested:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then

determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742. Winston has asked this Court to conduct a *Pavey* hearing to resolve the issue of exhaustion of remedies. (Docket #120). The defendants oppose such a hearing. (Docket #122).

In this case, a hearing is not necessary for this Court to arrive at its conclusion that Winston did not sufficiently exhaust his remedies before filing suit. The Court has considered the myriad evidence Winston submitted in an attempt to bolster his story that he did, in fact, file relevant grievances, but that he did not or could not keep copies and the defendants refuse to provide him copies in response to his many letters and requests for the same. The problem with Winston's efforts to prove that he properly exhausted his remedies, apart from the procedural defects,[5] is simple: he provides no credible evidence that he actually filed

---

[5]Winston did not properly dispute the defendants' proposed findings of fact related to exhaustion. The federal local rules of procedure require that a

grievances when he said he did. He has given the Court no copies of his grievances related to the claims he now presents, and he does not convincingly rebut the evidence proffered by the defendants that a search of the Milwaukee County Jail grievance database turned up nothing from Winston related to the issues germane to this suit.

Having failed to file grievances while incarcerated at the Jail, Winston could have written to the Jail to request a grievance form at any time before filing this suit. As Winston himself points out, *see* (Docket #98 at 3-4), the Jail's grievance policy does not have a time limit on the filing of grievances.[6] Indeed, Winston knew how to correspond with the Jail; he says that he wrote to the Jail twice and to Clarke once to ask for copies of the grievances he claimed to have filed. Although Winston's after-the-fact letters do provide some details of his medical and prison-conditions complaints, the letters themselves do not suffice as grievances as prescribed by the Jail policy, as they were not written on the appropriate form and submitted to an appropriate officer. However taxing Winston

---

party opposing a moving party's statement of facts provide "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon" to substantiate his dispute of fact. Fed. R. Civ. P. 56; Civ. L. R. 56(b)(2)(B)(i). Winston's response does not contain citations or references to affidavits, declarations, parts of the record, or other supporting materials on which he relies as a basis for his disagreements. (Docket #104). For this reason alone, the Court could disregard Winston's factual disputes in their entirety. *See* Fed. R. Civ. P. 56(e); *see also Greer v. Board of Educ. of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) (*pro se* status does not excuse non-compliance with Rule 56).

[6]Winston cannot claim that there was an emergent need to file this suit, as the statute of limitations on prisoners' civil rights claims filed in Wisconsin is six years. *See Miles v. Trempealeau County*, 204 F. App'x 570, 572 (7th Cir. 2006) (citing Wis. Stat. § 893.53). He could have requested a grievance form, completed it, and directed it to an officer or lieutenant long before the statute of limitations would have expired.

might believe the grievance process to be, its completion in the manner outlined by the Jail's policy is necessary to put the Jail on notice of Winton's claims so it can attempt a resolution before the claims arrive in this Court. *See Woodford v. Ngo,* 548 U.S. 81, 93 (2006) ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.") (citations and internal formatting omitted).

Furthermore, there is no evidence that Winston followed through with the appeals process for his alleged grievances as is required by the Jail's policy. He is not excused from the requirement to appeal simply because he was not allowed writing utensils during the periods he was on observation for self-harm. And again, his after-the-fact letters do not suffice as appeals because the predicate to an appeal is a grievance and an unfavorable response, and Winston has not shown that those predicates exist.

This case is not one where exhaustion can be excused because jail officials impeded an inmate's ability to effectively participate in the grievance process. For example, in *Dale v. Lappin*, the Seventh Circuit reversed a district court's grant of summary judgment on exhaustion because the plaintiff inmate averred that he requested grievance forms several times to no avail during his stay at the prison where his claims arose. 376 F.3d 652, 655–56 (7th Cir. 2004). In support of his argument that his efforts to properly grieve were frustrated by prison staff, the inmate

> "identifie[d] the prison employees from whom he requested forms: his counselor, his case manager, the on-duty floor officer, and members of his unit team. [He] also identifie[d] the specific form he requested, the BP–8, which is the first

> form the Bureau of Prisons requires inmates to complete in order to submit a grievance. [He] also aver[red] that the on-duty officer gave him blank sheets of paper when he requested a grievance form, that he was told by his counselor and case manager that they did not have the proper grievance form, that he requested a form from his counselor and was told that forms had to be issued by the unit team, and that he notified the members of his unit team several times that he had been denied grievance forms, but got no response.

*Id.* (internal citations omitted).

The Court of Appeals found that "level of detail" from the plaintiff inmate was sufficient to rebut the defendants' exhaustion defense. *Id.* at 656. In this case, Winston has provided great detail about his attempts to obtain copies of the grievances he allegedly filed while at the Jail, but he does not provide detailed or convincing evidence that he actually filed those grievances in the first place. For example, in response to the defendants' proposed findings of fact relating to Winston's failure to file grievances, Winston simply responded: "Disputed. Plaintiff filed grievances and follow up inquiries regarding the complaints." (Docket #104 at 2, 3, 4, and 5). Winston's statement was not accompanied by any citation to evidence.

Ultimately, the Court finds not credible Winston's evidence and declaration testimony that he properly and thoroughly exhausted his remedies before filing suit. A hearing on this issue is thus unnecessary. Winston has already submitted, and the Court has considered, all the evidence Winston hoped would persuade the Court. Short of inventing new evidence, Winston could do no more at a hearing than he has already done in his briefing, and the Court will not invite him to conjure evidence

at this late hour. *See Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (citation omitted). A hearing would do nothing but waste the parties', the Court's, and the taxpayers' resources. Winston's motion for a hearing on the issue of exhaustion, (Docket #120), will be denied.

Summary judgment will be granted in favor of the defendants on the ground that Winston has not exhausted available remedies within the Jail. *Pavey*, 544 F.3d at 742 (when the Court finds the prisoner failed to exhaust, and "the failure to exhaust was the prisoner's fault, . . . the case is over"). Winston's motion for summary judgment will be denied.

5.  **CONCLUSION**

The defendants have proven that Winston did not exhaust his administrative remedies as to the claims he raises in this lawsuit, and Winston's claims will therefore be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust under § 1997e(a) is without prejudice).[7]

---

[7]Winston filed numerous additional motions during the pendency of the parties' summary judgment motions. On January 26, 2017, he filed a motion for extension of time to file a reply brief. (Docket #89). He filed his reply on February 1, 2017, and the Court has considered it. (Docket #98). That motion will be denied as moot. On February 13, 2017, he filed a motion for reconsideration of the Court's order denying compulsion of discovery. (Docket #100). The discovery Winston seeks with that motion relates to the merits of his claims, which the Court does not reach in this case because it finds that Winston has not exhausted his remedies. That motion will be denied as moot. On February 13, 2017, Winston moved for the imposition of sanctions against the defendants and their counsel. (Docket #102). On March 17, 2017, Winston filed a motion to strike the defendants' opposition to his motion for sanctions. (Docket #112). The sanctions motions also relate to merits discovery and will thus be denied. On April 11,

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #91) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #69) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time to file his reply brief (Docket #89) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss certain defendants (Docket #132) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendants Jeffrey Andrykowski, Lieutenant Reeves, Lieutenant Reckless, Officer Spittlemeister, Mai Xiong, Terry Goudy, and Brandon Lawler be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that plaintiff's motion for a *Pavey* hearing (Docket #120) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement his summary judgment submissions (Docket #128) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to stay (Docket #126) be and the same is hereby **DENIED as moot**;

---

2017, Winston filed a motion for the appointment of counsel. (Docket #118). He asked for the appointment of counsel twice previously in this case, *see* (Docket #45, #48), and the Court denied both requests because the defendant has proven capable of litigating this case on his own. Nothing has changed since Winston's first two motions for the appointment of counsel, and the Court will therefore deny his third.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket #118) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for sanctions (Docket #102) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendants' brief in response to his motion for sanctions (Docket #112) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration of his motion to compel (Docket #100) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge